We will hear argument this morning in Case 21-499, Vega v. Tekoh. Mr. Martinez? Mr. Chief Justice, and may it please the Court, the Ninth Circuit's extension of Miranda into 1983 litigation is inconsistent with settled precedent and sound policy for two reasons you should reverse. First, Miranda is a judicially crafted prophylactic rule, and the violation of such a rule doesn't violate the constitutional rights of any person. That's what the Chavez plurality said, reiterating pre-Dickerson holdings that Miranda violations result in no constitutional deprivation, that's Payne, and no identifiable constitutional harm, that's Elstadt. Tekoh and the Ninth Circuit say that Dickerson abandoned these cases, but in fact Dickerson reaffirmed their limits on Miranda's scope. The cases show that Miranda's presumption of coercion applies only when courts assess whether a statement is admissible in the prosecution's case-in-chief at trial. In that context, when a defendant's liberty is at stake, Miranda creates a protective fence around the Fifth Amendment. It gives defendants a windfall benefit by excluding statements that are completely voluntary. A trial court's Miranda violation taking away that windfall is reversible error, but it doesn't violate the defendant's actual Fifth Amendment rights, and it doesn't trigger a right to money damages. Second, as Tekoh now concedes, the Ninth Circuit's proximate causation holding is wrong. That concession provides a complete basis for reversal here. Officers can't be held liable when the mistakes are made by prosecutors and judges. Tekoh tries to rescue his case with a brand new causation theory based on alleged lies, but that theory can't work for him here. It's inconsistent with his jury instruction, it was forfeited below, its factual premise was rejected by the jury, and it's legally baseless in any event. Sergeant Vega's conduct has been exonerated from every angle by four different fact-finders. Two judges said Miranda warnings weren't required. A jury said there was no fabrication of evidence. Both juries said there was no coercion. This case should end. Unless the court has questions, I'll start with our view of what- Mr. Martinez, in Dickerson, the court held that Miranda could not be displaced by a federal statute, by Congress. If that's the case, then why is it not a constitutional-a right secured by the Constitution and hence actionable under 1983? Your Honor, we read Dickerson as saying that Miranda has constitutional status, constitutional underpinnings, and we agree with the other side. What does that mean? I think what that means is that it can't be overturned by statute. But I think Dickerson was very clear that it was not, you know, there was a dispute in Dickerson between the majority opinion and Justice Scalia, where Justice Scalia was saying the majority's theory here is basically that a Miranda violation is a violation of Fifth Amendment rights. And the court very clearly didn't-was not willing to say that. I think the dispute between us here and what Dickerson does is whether Dickerson essentially changes the status quo and overturns the line of pre-Dickerson cases, the cases that came between Miranda and Dickerson, which repeatedly said that a violation of Miranda doesn't violate anyone's constitutional rights. And the Chavez plurality, I think, addresses this issue head-on, and it says that because Miranda's a judicially created prophylactic rule, the violation of that rule doesn't violate anyone's constitutional rights. And that's consistent, as I was saying earlier, with what the court had previously said in cases like Payne and Elstad. Yeah, but I couldn't get a majority in Chavez, so the-I don't know how much that does for you. Would you tell me what is the-how could something be both-a rule be both prophylactic and constitutional? I think it could be prophylactic and constitutional because the whole purpose of the rule is to protect the underlying constitutional right against compelled self-incrimination. So what this court has said repeatedly in the cases between Miranda and Dickerson, but also in the Chavez plurality, is that essentially the rule is prophylactic in the sense that it sweeps more broadly than the Fifth Amendment itself. It excludes statements that are voluntary and therefore themselves would not violate the Fifth Amendment. And the court has said in Dickerson that this extra measure of protection is needed for a reason, because it's hard to know what goes on inside the interrogation room and when a defendant's liberty is at stake in the criminal trial, and when the prosecution's trying to use a statement as part of its case in chief at trial, we're essentially going to presume coercion. We're going to presume a Fifth Amendment violation in that context. So what the cases do essentially is create a presumption of coercion in that one context. But the presumption of coercion is very different from actual coercion, and we know that from all of the pre-Dickerson cases, which essentially say that statements that would be excludable under Miranda because they are presumed to have been coerced can nonetheless be used in other ways that would be impermissible if they were actually coerced. Mr. Martinez, if I could focus just for a minute on the language of the cause of action here, 1983. It gives individuals a right against the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. Now, under Miranda, you have a right not to have unwarned confessions admitted into evidence. You wouldn't have that right if it weren't for the Constitution. So why isn't that right one secured by the Constitution? Well, I think for a couple of reasons, Your Honor. I think, first of all, you have a precedential reason, which is that both before and after Dickerson, the Court has made clear, or at least a majority before Dickerson, and then the plurality in Chavez, I think, interpreting the whole line of cases including Dickerson. Let's focus on the text. It seems to me that you wouldn't have a Miranda right if it weren't for the Constitution. The right is secured by the Constitution. We don't think that Miranda creates a Fifth Amendment right in the sense that it's relevant here in the 1983 context. And I think one way to think about this is there are all sorts of evidentiary rules that are out there that a defendant can invoke at a criminal trial or a party can invoke in litigation. There are all sorts of evidentiary rules that can be invoked, but no one thinks that those evidentiary rules create rights that are enforceable in 1983. I think the two examples that I'll give you, the exclusionary rule under the Fourth Amendment, is a rule of law that can be invoked by the defendant, but in Calandra this Court has recognized that it doesn't create a personal constitutional right in the relevant sense. Federal rules of evidence is another example. If I sue a state government under Title VII on an employment discrimination claim and the opposing counsel for the state introduces a statement that was in violation of the hearsay rule or in violation of the rule against character evidence, that violates a rule of evidence that's a law of the United States, but it's not a right under 1983. It's a right secured by the federal rules of evidence. What is the comparable provision that secures the Miranda right? Under your example, it's a federal rule of evidence that secures the right. What's comparable? We think the Constitution secures the ability to block the statement. We don't dispute that. What we're saying is that the Constitution doesn't and here the claim that's being brought is that it's the Fifth Amendment and that's the only argument that the other side has made. We just don't think that the Fifth Amendment creates a right that is enforceable or that is violated when an unwarranted statement is admitted. And again, that's consistent with how the Chavez plurality I think correctly read Dickerson and the pre-Dickerson cases to kind of come up with a coherent harmonization of this court's cases starting with Miranda, taking the intervening cases between Miranda and Dickerson and then Dickerson itself. All those cases I think are best read the way that the Chavez plurality read them to essentially say, yes, Miranda's important and it's constitutionalized, you can't overturn it, but at the same time a deprivation of a judicially created prophylactic rule like the one in Miranda doesn't violate the Constitution. And it does strike me, Mr. Martinez, that you keep on saying like both before and after Dickerson. Now after Dickerson you're relying mostly on a plurality which as Justice Thomas said is a plurality and before Dickerson, you know, you definitely have some good cases on your side but then there's Dickerson and Dickerson says something that's quite different from the before Dickerson cases where, you know, even though Chief Justice Rehnquist didn't do exactly, you know, state in exactly so many words as you suggested that there was, you know, a right to, that Miranda gave rise to. So he said all but that in exactly the way Justice Thomas suggested. Justice Kagan, I respectfully would disagree with that but I think you've put your finger on the kind of issue which is what exactly does Dickerson do? And just to frame this issue, if you look at what the Ninth Circuit said, this is at page 20A of the petition appendix. The Ninth Circuit says that the Supreme Court in no way maintained the status quo and it affirmatively backed away from the prior cases. So it reads Dickerson as a decision that creates this evulsive change, rejects the earlier cases, comes up with something new. If you look at the language of Dickerson itself, it's exactly the opposite. And I would refer the court to page 443 of Dickerson. When Dickerson is talking about this alleged discrepancy between the Miranda rule and the post-Miranda cases, Justice Scalia and others had argued that Miranda should be overturned because the case law is incoherent and the court in Dickerson says no. The theoretical underpinnings of Miranda are perfectly consistent with the post-Miranda cases that we're relying on. And it says that these are all consistent, it's one harmonious. But in fact what Dickerson does is Dickerson says there's a constitutional baseline here and it might be that Congress could come up with something that's just as effective as Miranda or more so, but that's what Congress would have to do if Congress wants to intervene in this area. There is a constitutional baseline of procedures that are constitutionally necessary to secure the constitutional Fifth Amendment right. That's exactly right, Your Honor, but the justification Dickerson gave was not that we're doing something new. In fact, it was the opposite. It said that we've always done this. It looked back and it said Miranda was always... To the extent it does that, it essentially recasts the precedent in its own light. But it's the relevant precedent here. I agree with that, but I just think that you need to read or focus on the part of the precedent where it says that the post-Miranda cases that clarify the rule and what it means, the post-Miranda cases that we're relying on, that those are perfectly consistent with the theoretical underpinnings of Miranda itself. And so I think Dickerson very consciously is saying, you know, it's not saying, well, hey, we zigzagged a couple of times and we've got to zigzag back. It's saying, no, this is actually a consistent, common sense, coherent line of cases. I think it's really driven by Justice Rehnquist and Chief Justice Rehnquist's votes and opinions throughout this entire line of doctrine, including Dickerson and Chavez and in the earlier cases as well. And it basically says, yeah, Miranda's constitutionalized. It's very important. You can't overturn it by statute, but that doesn't mean that it creates a kind of presumption of coercion that applies in every single context. So if that's the case, then what do we do with Dickerson's observation that if we don't view it as being constitutionally required, that I'm using the language of Dickerson, all right, what do we do with calling it a prophylactic rule, which Dickerson rejected expressly? It said that language is loosely used and doesn't suggest that it's not constitutionally required. If it's constitutionally required, why does it bind state courts? Why do we have habeas review? If we do what you're suggesting and go back to the prophylactic language, we are suggesting that you want us to overturn the essence of Dickerson and Miranda. No, we have no quarrel with those cases. We have no objection to any of those cases at all. We don't think that Dickerson rejected the prophylactic rule language, and we know that because Dickerson said it was consistent with the pre-Dickerson cases. I'll quote Dickerson. Conceded that there is language in some of our opinions that supports the view taken by the Court of Appeals, suggesting that the Court's earlier statement suggesting that Miranda was merely prophylactic and its conclusion that Miranda protections were not constitutionally required, and it rejected the prophylactic description. No, Your Honor, I think it rejected the conclusion that the Constitution doesn't require it. All right. Then we go back to the Chief's question. But if we say the Constitution doesn't require it, how do we have habeas review, and how do we get to tell state courts that they have to follow a rule that's not constitutionally required? Your Honor, just to be very clear, we are not asking you to overturn Dickerson. We think that Dickerson is what it is. We think it's perfectly good law. In fact, I think we said some nice things about it. Just answer my question. If it's a prophylactic rule, not required by the Constitution, is it required by the Constitution? I think Dickerson says that it has to be. If it's required, then we go back to the Chief's reading of the language of 1983. But I still don't understand how using the word prophylactic gets you out of 1983. So I think what prophylactic means is that what the court has said is that we need this prophylactic rule. We need to go broader than the Constitution itself. We need to presume coercion in this context in order to protect the underlying right against compelled self-incrimination. And so it's kind of an adjunct. But that's different from saying that it violates the actual constitutional rights of someone if a statement is admitted. And that's why the court said that repeatedly in Payne and Elstad. And that's why I think the Chavez plurality correctly harmonized the case law and recognized that that was true even after Dickerson. Can you tell me why we're here? You have two-I don't want you to stop before you get to the second, the proximate cause. Okay? You are right that the other side never gave the trial court below an instruction consistent with its position today. That the only statements that it could rely upon as giving it a cause of action are statements that were falsely made by the police. So there's some sort of estoppel going on here. So I'm not sure how they can win no matter what we find. We agree with that, Your Honor. All right. And so assuming that we don't touch Miranda or Dickerson and take it at its face and we go to your second point, proximate causation, you win because there's some sort of estoppel here? So I think just to be very clear because I want to make sure that analytically we're all set. On the first issue, we agree we don't have to touch Miranda or Dickerson. You don't have to overturn those decisions. But we can still win based on the understanding of Miranda and Dickerson that was put forth in the Chavez plurality and that we think is right. If you agree with us on that, you can stop there. We win the case. If you want to then turn to proximate causation, I think the most straightforward way to resolve the case is to say that the Ninth Circuit decided this case based on the instruction that was proposed and the theory that was put forward. The Ninth Circuit's analysis of that is wrong for the reasons that we argued in our brief and that they essentially concede. And I think you could just end it right there if you wanted to reach a holding on proximate causation. But just to be clear, we do think we have an independent basis to win on our first argument. If you want to go beyond that on proximate causation, I'm happy to talk about why we think that theory both was not preserved below, not preserved at the search stage here, inconsistent with their jury instructions, actually unsupported. We can talk about all that, too. Two prosecutors below and a judge at trial permitted the statement to come in. But in my experience, the prosecutor offers a statement based on what the police officer says. And it's not until a hearing or the trial that the defense puts on his or her side of the story. And then it's the jury who decides whether or not that confession was in fact coerced. If there's a conviction, clearly the defense's story has not been believed. If there's an acquittal, like there was here, it's an open question as to whether or not the police officer was believed or not. But I don't understand how you can say that there's an intervening cause by a judge or a prosecutor in introducing a statement if they're not the ultimate arbiter of who's telling the truth. Well, I think two points on that, if I can answer, Mr. Chief Justice. First of all, here there was a suppression hearing. There was a full-blown adversarial suppressing hearing. That's the point in time in the case in which both sides have to come forward with their best evidence to argue about the admissibility of the statement. And twice in front of both criminal trial judges, because this was done twice, twice the trial judge agreed with us that there was no Miranda warning that was required here. And so I think that in and of itself is significant. And I think this Section 1983 litigation really is an attempt to re-litigate that sort of fundamental point. And so I guess I'll leave it there. But I'm happy to come back to it in the seriatim questioning. Thank you, counsel. Justice Thomas. Justice Breyer. Mr. Martinez, you mentioned before Chief Justice Rehnquist's journey in these cases. I just want to talk a little bit about that. I appreciate that you think that your position does not undermine or isn't consistent with Dickerson. But I kind of want to assume that that's not true, or at least have you assume that people could think that it was not true. Sorry, to assume that it was? That it does. That if we come out your way, it will undermine Dickerson. It will be understood as inconsistent with Dickerson. I mean, that's what I think, and I know you don't think it, but I want to put that aside. And to have you at least acknowledge that there are many people who will think of this as utterly inconsistent with Dickerson. And I just want to have your reaction to what Dickerson was all about and what it said about the court as an institution. In part through the lens of Chief Justice Rehnquist's progress through these cases. Because, you know, I think what people think about Dickerson is that essentially the Chief Justice understood that Miranda had come to mean something extremely important in the way people understood the law and the way people understood the Constitution. And that whatever he might have thought about the original bases of Miranda, that it was sort of central to people's understanding of the law. And that if you overturned it or undermined it or denigrated it, it would have a kind of unsettling effect, not only on people's understanding of the criminal justice system, but on people's understanding of the court itself and the legitimacy of the court and the way the court operates and the way the court sticks to what it says. You know, not just in a kind of technical stare decisis sense, but in a more profound sense about the court as an institution and the role it plays in society. So I guess I might be above your pay grade and I'm sorry if it is, but if you would just react to that. Your Honor, I think those are important points and I think that the best way to write an opinion that's consistent with those points and takes proper account of them is to say very clearly that Dickerson remains good law. It stays on the books. Miranda and Dickerson are important constitutional decisions of this court. But that those decisions do not go so far as to require the recognition that a Fifth Amendment right has been violated in such a way as to trigger 1983 liability. So I think it's perfectly consistent and it's perfectly consistent with what Chief Justice Rehnquist himself voted to do a couple years later in Chavez. Perfectly consistent with Dickerson to say both of those things simultaneously and to the people out there who might be confused about this line of case law. Obviously, it's been a very controversial line of case law. All these cases have dissents going back. The dissents are always saying that the majority's opinion is inconsistent with the prior cases. But the through line that runs through them is a consistent common sense approach by Chief Justice Rehnquist to recognize the importance of Miranda, but also to recognize its important limits. And I think you can write an opinion that says both of those things, that doesn't do any harm to Dickerson, but does say that the presumption of coercion that was recognized in those cases doesn't mean that you have to presume a Fifth Amendment violation when it comes to 1983. Justice Gorsuch? Counsel, I'd just like to get your reaction to some of the scholarship that we received in the amicus briefs from a variety of historians suggesting that whether or not Miranda intended to or aimed at the original meaning of the Constitution, there was a fair amount of evidence that by the time of the founding, warnings were considered an important prophylactic rule to protect the right against self-incrimination. Right. Your Honor, I think those are important points to consider. I think that this is not the case in which to consider them mainly. All right. If you'd just spot me that. Sure. Address it on the merits. On the merits, I think the historian's brief helps us. I think what the historian's brief says is that it is exhaustively looked at a whole bunch of evidence that hadn't been considered before. And if you read closely at what it says that evidence shows, I think what it says is that in a lot of cases, people were encouraged to give warnings because it would help protect the admissibility of statements under a totality of circumstances analysis. What the cases don't show, or what the examples don't show, what the historical evidence does not show, is that there is a mandatory rule of exclusion, which is what Miranda recognized. And it certainly doesn't show that there's a mandatory rule of exclusion that somehow gives right to a private cause of action for money damages. So I think that the evidence is actually telling in what it doesn't show. And what it doesn't show is the key point of Miranda and Dickerson, which is that there has to be, as an original matter at least, this underlying exclusionary rule. The evidence doesn't support an exclusionary rule. I think the final thing I'd say on this, though, Your Honor, is that if the Court were inclined to take a serious originalist look at this language, I think, again, you should do it in a case where it's more properly presented. But I also think you would have to grapple with, of course, the actual text of the Fifth Amendment, which does require compulsion and only bars compelled statements. Justice Kavanaugh? What would you say about Withrow, where a lot of the arguments that you're advancing today were similarly advanced as a basis for saying that Miranda claims should not be cognizable and habeas? I think the best way to understand Withrow is that it's essentially treating – Withrow is the habeas case, of course, and it's essentially – the issue in that case is whether the statement was properly admitted at trial, whether the trial judge made a mistake by not excluding the statement. And I think it's very similar to the direct appeal context, and I think it's consistent with the underlying purposes of Miranda and Dickerson, which basically limit the presumption of coercion to the admissibility decision by the trial judge at the criminal trial. And I think Withrow says, essentially, recognizing that that's where liberty matters most, we're going to apply the presumption of coercion in that circumstance, and we're going to allow habeas relief. The text of the habeas statute is different from the text of 1983. We don't think that simply because something's cognizable and habeas, it's necessarily cognizable in 1983. If you agree with us in our position based on the Chavez plurality and Justice Rehnquist, you can conclude that there's no Fifth Amendment right that's been violated by a Miranda violation, and therefore there's no 1983 liability even if there is a habeas – a violation that's cognizable and habeas. Thank you. Justice Barrett? Mr. Martinez, I want to present something to you and see if it's consistent with your understanding. I think Justice Kagan makes some good points, and, you know, there are points made by your friend on the other side about your position being inconsistent with Dickerson. But I wonder whether this is a way that you would agree with characterizing it. So Dickerson didn't ever use the word constitutional right. It seemed very carefully worded to say constitutional rule or constitutionally required. And I've always taken one of the reasons why Dickerson was controversial was that it asserted a right vis-à-vis state courts and vis-à-vis Congress for the court to announce constitutional prophylactic rules that it could impose on state courts and that it could assert as against Congress, so Congress couldn't overrule it by statute, but that it didn't think were constitutionally required. So there was inherent tension in Dickerson, and Chief Justice Rehnquist said, we're not overruling Miranda and we're living with that tension, but never characterized it as a right. And that's an important power, it seems to me, that Dickerson recognized and asserted and that you're not asking us to overturn, right? Correct. And so would that description of Dickerson be consistent with your view that Dickerson acknowledged a power on the court that you want us to leave undisturbed, that it could implement the Fifth Amendment right or that it could prophylactically protect it in a powerful way against the states and Congress, but that isn't a definition of the right itself? Yes, I think that's exactly right, Justice Barrett. And I think the only additional point I would make is that although this power has been recognized, not just in the Miranda-Lana cases, but in a couple others as well, the power to create a kind of prophylactic rule to protect a constitutional guarantee, I think the court has always recognized that it's doing something very unusual when it creates these rules and that it needs to be very careful and limited and focused on what is the core underlying real-life constitutional right that you're protecting. And so whether it's the Petain plurality saying that there needs to be a closest possible fit between the application of the Miranda rule and the underlying right against self-incrimination at trial, or Tucker saying the same thing, you really need to do a very rigorous cost-benefit analysis and show that expanding or creating a prophylactic rule is really necessary. Here, we think it's necessary, or the court has said it's necessary, when you're introducing evidence in the prosecution's case in chief at trial, but the court has repeatedly refused to go beyond that, and we respectfully would submit that you shouldn't go beyond it in this case. Thank you. I'd like to ask you if there is any analogy you've come across that would have these characteristics. One, A, there is a constitutional rule. B, there is a prophylactic rule to enforce the constitutional rule. C, Congress does not have the power under the Constitution to change the prophylactic rule. And D, you can enforce the prophylactic rule in habeas, but not in 1983. Your Honor, that's a great question. I don't have a specific example that I know for certain sort of checks all four of those boxes. I do think, though, I will point you to the context. I think the Stovall case and the Manson case recognized a prophylactic evidentiary rule of exclusion that allows defendants to exclude overly suggestive police lineups, and that has been understood by the lower courts correctly as a prophylactic constitutional rule. Although I don't think that that could be overturned by Congress, I don't think that Congress could overturn this Court's decision, I think the lower courts have correctly recognized that's a prophylactic rule. It doesn't give rise to a right that can be enforced in 1983. Maybe you could add one other thing, because if it's so skimpy, the analogies, I don't know where I'm going if I adopt your position. That is to say, I don't know what other rules there are which may or may not fall within. I don't know what the distinctions would be. I don't know where we're going. I don't know how many prophylactic rules there are. I don't know how many have fallen within 1983. I don't know what the courts have said about prophylactic. I mean, we could stay here a long time, which we won't, listing things I don't know. Right. All right. So what do you think? Well, I think on that, I think, like I was suggesting earlier, I think you can write an opinion that makes very clear that you're talking about this particular prophylactic rule and that you're not talking about other circumstances. I think with respect to this particular rule— All right, then, if we take that approach, we have to have. Unfortunately, we cannot write it. We can say the words. This opinion applies only to—now fill in the blank. Today's case, not tomorrow's. It just doesn't work because the law doesn't work that way. It doesn't work if you stop there. But I think you would say, and here's the two reasons why. Number one, in this unique context, we have a lot of precedent that is repeatedly made clear that constitutional rights aren't violated when Miranda's violated. And number two, even if you didn't have that precedent, we would have to do a kind of cost-benefit analysis that is specific to this particular right. And here, the cost-benefit analysis supports excluding it from the prosecution's case in chief at trial, but it doesn't support treating the completely voluntary statement as coerced in other contexts. And I think that would distinguish other cases that you could then decide when they come up. Thank you, counsel. Mr. Suri. Mr. Chief Justice, and may it please the Court. Miranda recognized a constitutional right, but it's a trial right concerning the exclusion of evidence at a criminal trial. It isn't a substantive right to receive the Miranda warnings themselves. A police officer who fails to provide the Miranda warnings accordingly doesn't himself violate the constitutional right, and he also isn't legally responsible for any violation that might occur later at the trial. The Ninth Circuit's contrary decision should be reversed. What if the police officer purposely lies in order to convince the prosecutor to use the statement? We would still say that there is no Miranda claim, but I have to be clear that that issue is not properly presented in this case. Taking that as a hypothetical, however, we would say that there is no Miranda liability because we don't see how the causation problem can be solved without creating a witness immunity problem in its place. There are two actors that lie between the police officer and any Miranda violation, the prosecutor who offers the statement into evidence and the judge who admits it at the suppression hearing. And in order to show that the judge has been misled into admitting the evidence, you have to presumably argue that the police officer lied on the witness stand and thereby convinced the judge to introduce the evidence, but under absolute witness immunity, that can't be a predicate for liability. I mean, take an outlandish example, and it is outlandish, but suppose the police officer bribed the prosecutor and the judge. What then? I mean, at that point, I'll tell you what it seems to me. Your causation problem disappears, but there must be some way of saying that that's such an unusual case that we're not going to bend or change the rule for it, but I don't exactly quite know how that argument works legally, so I guess I'm asking you to provide the missing pieces. Okay. This court has said that in applying causation principles or other common law principles, it isn't tied exactly to the old common law rules. It can adjust those approaches as necessary in light of the nature of the right at issue. In addition, the court sometimes adopts categorical rules that may fit imperfectly in some extreme cases, but it acknowledges that those cases are so unlikely to arise that it's not worth trying to deal with them. And the two best examples I can think of are the retaliatory inducement to prosecute case, Hartman against Moore, and Nieves against Barclay, which is retaliatory arrest. In both of those cases, the court said that because of causation problems, we're going to adopt a categorical rule requiring the plaintiff to show the absence of probable cause in order to allow that case to come forward. Now, it's true. Theoretically, you can think of some outlandish hypotheticals where there is probable cause, yet there should be a retaliatory arrest or prosecution claim. And the court still said, we're going to adopt a categorical rule. And we suggest that the court could adopt a similar categorical rule here because, as you say, the only circumstances that we can think of where there's no causation problem are so outlandish, it's not worth trying to preserve those. Counsel, I'm not sure what witness immunity has to do with this issue. Yes, you're immune from prosecution for any testimony you give at a trial. But if you're testifying falsely, and that's what induces a judge or a prosecutor to use your statement, I don't understand why that should be immune from 1983. Your Honor, that view is contrary to this Court's previous decision in Briscoe against LaHue. In that case, the Court held that witnesses enjoy absolute immunity from 1983 claims for their testimony, and it specifically held that that extends even to perjured testimony. The reasoning of the decision is that the appropriate remedy for perjury is a criminal prosecution for perjury, but we don't want to discourage witnesses by exposing them to the specter of civil liability. Counsel, your argument for a firm proximate cause rule has some appeal, obviously, the clarity of it. But I wonder, have you thought about, and I'm sure you have and you can help us think about, how it would apply outside the Miranda context and how it might bleed into other constitutional rights and make them more difficult to assert under 1983 an involuntary confession under, forget about Miranda, a tortured confession being admitted. Are you concerned, is the government concerned, that its rule would place the onus on the prosecutor to deal with that and not allow recovery against the police officer who conducted the tortured confession? Justice Gorsuch, let me first explain why the logic of our position would indeed affect some other constitutional rights and then turn to, if you're uncomfortable with that, how you can cabin the logic so that it applies only to this particular right. So to take the first part first, yes, it's true, our logic does apply, for example, to self-incrimination claims. But that shouldn't trouble you because this Court has recognized an independent substantive due process limit on what the police can do in the interrogation itself. If the police torture an individual or even beat him, that's a substantive due process violation that is actionable under Section 1983. I get that argument, but there's an additional quantum of harm surely associated with its introduction at trial and potential conviction wrongfully, and your rule, I think, would take that out of play. And maybe it won't, but I'd like to hear your thoughts. No, it would take that out of play, Justice Gorsuch, and the reason the Court shouldn't be troubled by that is that the appropriate forum for redressing harms that occur in the trial itself is the appeal process and habeas corpus, not a collateral civil suit attacking the trial ruling. We might say that about almost anything that happens at trial, but we have 1983 actions all the time about things that happen at trial. I don't think that's right, Justice Gorsuch. You have 1983 actions about things that happen outside trial, like unreasonable searches and seizures, but you don't have 1983 claims about things that happen in the trial itself, like ineffective assistance of counsel or denial of a jury trial right. Those are traditionally enforced through the appellate process. And if I can offer an analogy to show why this makes sense, think of this Court's Confrontation Clause jurisprudence. The Court has held that the introduction of a forensic analyst's report at a trial can be a confrontation violation if the analyst isn't put on the stand. Now, we would say that you can't sue the analyst under Section 1983 on the theory that he proximately caused the prosecutor's violation of the Confrontation Clause. Your remedy would be an appeal, not a 1983 claim. So, yes, that is one consequence of our theory, but that's a perfectly reasonable consequence. I don't think it makes sense to allow collateral Confrontation Clause challenges. Let's say I'm a little worried about that. You said you had a narrower approach. What's that? This Court has said most recently in the Thompson opinion that Justice Kavanaugh wrote earlier this term that common law principles must be applied in light of the values and purposes of the right at issue. And the right at issue here, the Miranda right, has always been based on an analysis of what is necessary in practice to enforce the self-incrimination right. And the Court has enforced it as far as it is necessary, but it hasn't taken it any further. It said that Miranda applies, for example, only in the case in chief in a criminal prosecution. It doesn't apply to impeachment. It doesn't apply to the fruits of the evidence. It doesn't apply in public safety cases. And the Court could say similarly that it's not necessary to apply it in a civil trial. Thank you. You just talked about enforcing the right, but the government, as I understand it, has taken the position that this is a Fifth Amendment right, although in your brief you kind of, which strikes me as probably careful language, characterized as a federal right. You don't actually say Fifth Amendment right that I saw. Could you elaborate on the government's position there? Yes. We think Miranda is a constitutional right. To use the language of Section 1983, it is any right, privilege, or immunity secured by the Constitution. And if I could divide that into two parts, secured by the Constitution, because Dickerson says it is a constitutional rule. And right privilege or immunity is drawing a distinction between rights and structural provisions like separation of powers or federalism provisions. But Miranda is pretty clearly a right rather than a structural provision. In addition, if you look at this Court's past 1983 cases, the Court has defined the term right in the constitutional context extremely broadly. For example, in Dennis v. Higgins, the Court held that the negative commerce clause gives rise to rights enforceable under Section 1983, even though one might think of the commerce clause as a structural provision rather than a rights provision. So if that's a right, then surely we think Miranda is a right. And, of course, it's constitutional because Dickerson says so. Can you address Justice Kagan's question to Mr. Martinez about the precedent and how we should think about the precedent? Yes. I think one of the reasons we have not relied on the theory that Miranda is not a constitutional right is precisely the concern that Justice Kagan has raised that would seem to undermine what the Court has said all these years, especially in Dickerson. But even apart from that, we just don't think that that theory is correct as an original matter, and we don't think it's necessary in order for the Court to foreclose Miranda claims from Section 1983. Would you care to comment on the historian's briefs and the suggestion that Miranda might have a better original provenance than previously been taught? I wish, Justice Gorsuch, I could say that Miranda in its totality is supported by the original meaning of the Constitution. I'm afraid I cannot in all candor go quite that far. The historian's brief supports one aspect of Miranda, which is the warning requirement. Miranda, of course, goes beyond warnings. It also talks about having counsel present at the interrogation. And in all candor, I have to concede that the historian's brief doesn't provide support for that aspect of the Miranda decision, that instead we think it's still correct because it's been found necessary to implement the self-incrimination right as a practical matter. But with respect to the warnings, it's certainly the case that warnings were much more commonplace than one might have imagined. If you look at Chief Justice White's opinion in Brown against the United States, he talks about these warning requirements. So it isn't just the original meaning at the time of the founding. It's also the 19th century case law that recognizes that warnings are an important part of implementing the Fifth Amendment. Nevertheless, that doesn't affect our argument in this case, because the issue in this case, of course, is whether Miranda is civilly enforceable. And if you look back to founding-era sources, I've seen no evidence that you would bring collateral civil actions, saying that an involuntary confession or other type of improper evidence was introduced at a criminal trial. The appropriate remedy would have been the exclusion of that evidence at the trial itself, not some collateral civil proceeding. In contrast, we have lots of history of civil suits about the equivalent of the Fourth Amendment. Unreasonable searches were at issue in Entik against Carrington, Wilkes against Wood, cases like that. The absence of any comparable history here should give you some comfort that this is indeed not the kind of thing that is meant to be civilly enforceable. If you have the situation where a police officer does something that violates a constitutional right, but that later a prosecutor makes an independent decision about whether the prosecution will attempt to obtain any advantage at trial as a result of the conduct of the police officer, that, I take it, is what you think is the situation here. Could you state in general terms the rule that you think applies as to the creation of a categorical rule regarding the absence of proximate cause? I'm sorry, Justice Alito, I think I have to take issue with the premise of the question, which is we don't accept that the police officer has done anything unlawful. Our theory is that the unlawful act is committed entirely at the trial itself. But our rule is that when a police officer... Alright, well, so we're getting back to the issue of the nature of the Miranda violation. When something is done by the police officer, but the prosecution seeks to obtain some advantage at trial as a result of something that was done or was not done and should have been done by the police officer, how would you state in general terms the rule about cutting off proximate cause? The rule is that when a police officer does not himself engage in any legal violation, then in the absence of some special circumstance I can't think of right now, the prosecutors and the judges' independent decision about the action constitutes superseding causes that cut off liability. Justice Thomas? Justice Kavanaugh? Just the same question that I asked Mr. Martinez about Withrow and how you would deal with that. Withrow supports our position. Withrow described the Fifth Amendment right and Miranda as trial-focused rights. That suggests that Miranda is about what happens at the trial, whether the evidence is admitted or not admitted. It's not about what the police officer himself does. And indeed Withrow contrasted the Miranda right with the Fourth Amendment right on precisely that reasoning. It said the Fourth Amendment is about what happens outside the trial, and that's why it isn't enforceable in habeas corpus. Thank you. Thank you, Counsel. Mr. Hoffman? Mr. Chief Justice, and may it please the Court, Petitioner asked this Court to find that a police officer can never be found liable under Section 1983 for a Miranda violation. This is so even where an officer elicits an unworn custodial statement, lies about the circumstances, and the statement is introduced in the prosecution's case in chief. That categorical approach is counter to precedent, the text of Section 1983, and common sense. This case presents two distinct issues. On the first issue, the introduction of an unworn custodial statement is a violation of the defendant's Fifth Amendment rights, and therefore the basis for Section 1983 liability. If Miranda violations lead to habeas relief based on a violation of the Constitution or to the reversal of state criminal convictions on the same basis, the same violations fall within the broad remedial sweep of Section 1983. On the second issue, police officers, like any other state actor, can be sued under Section 1983 if their acts proximately cause a violation of constitutional rights. At a minimum, when an officer takes an unworn custodial statement and deceives the prosecutor about the circumstances of the interrogation, a jury can find that proximate cause exists. Mr. Teko has always argued that Deputy Vega gave a false account of the circumstances of the interrogation in this case. The Court of Appeals correctly found that Mr. Teko has a Section 1983 claim based on the Miranda violation and that a reasonable jury, if they believe Mr. Teko's testimony, could find that Deputy Vega was the proximate cause of this violation. I welcome the Court's questions. In the trials that we've had so far, have there been any findings by the jury that the officer lied? No, there hasn't been a finding that the officer lied. That issue hasn't really been presented to the jury. There was never a finding in this case about whether Mr. Teko was in custody or not. None of the juries were required to find that. In fact, from the beginning of this case, it was argued that the claim was that a violation of a core Miranda violation, the introduction of the statement at trial, gave rise to a 1983 violation, and the district judge refused to give that instruction on that theory of liability because he thought that the Chavez case overturned, made that claim unviable. And so the appeal to the Ninth Circuit that we made was to allow us to go forward with that claim. That's the issue that we raised in addition to an issue about an expert. But there's never been a finding one way or the other about whether the officer lied about the circumstances of the interrogation, which is at the heart of the case. That's always been the dispute in this case. So can you point me to somewhere in the record on either trial before the district courts where you presented that theory of your case? I've looked in vain, number one. And number two, in the first trial, it was a fabrication of evidence case. So tell me if they found against you on the fabrication of the evidence. Isn't that a finding that Mr. Vega didn't fabricate? No. I mean, what the jury was asked to find under standards that are much higher than the standards that would apply to a Fifth Amendment claim was the Fourteenth Amendment substance of due process claim. But at most, and what the district court found was that there was a finding that the officer did not fabricate the report and that a different officer didn't fabricate certain statements attributable to Mr. Teckel in one of his supplemental reports. That's all they found. They weren't asked to find anything about custody.  It doesn't matter, does it? If they found that he didn't fabricate the statements by your client, that was the whole basis of the decision about there, A, not being coercion, or B, that he wasn't in custody. Well, no. I mean, the custody part of it wasn't a part of it. And the district court properly found that we were able to go forward with a Fifth Amendment trial after the fabrication case. And so that argument was made to the judge, and the judge said, no, the jury hasn't made that finding. And whether the report was fabricated or not doesn't affect the Miranda violation. It could be a true statement. But doesn't it affect – I'm just confused because I have the same understanding as Justice Sotomayor. I understood your causation argument that you're pressing here, which is, as I understand it, narrower than the jury instruction that your client asked for below, to depend on this falsification of evidence claim. And that that was important to your proximate cause argument. But as Justice Sotomayor said, it was my understanding that you lost on the fabrication of evidence claims. No, our – and it may be useful, it seems to me, to clear up how the proximate cause issue happened here. There's a separate causation instruction that was a joint instruction from the defendant and the plaintiff. That's found on page 118A of the petitioner's appendix. And it's a moving force causation instruction. And it requires the plaintiff to show that the defendants were so closely related to the deprivation of the plaintiff's rights as to be the moving force that caused the ultimate injury. That was the agreed-upon instruction. And we never got to that point on the Miranda claim because the Miranda claim was never presented to the jury. So there wasn't any issue with that proximate cause because it didn't ever get to the jury. That was the agreed-upon instruction for the Fifth Amendment claim that the judge actually allowed to go forward. There's never – the defendant never asked for a superseding cause instruction. The defendant never raised any of the issues that have been raised in this court in the district court. There was an agreed-upon instruction. The defendant never made any claim in the Ninth Circuit about proximate cause. You can read all of the briefs. There's not a word about causation. But still, what is your – I mean, suppose I think hypothetically that when an improperly obtained confession is introduced into the trial, the person who does it is the prosecutor, and he has immunity, and he is the superseding cause of however this bad thing happened to occur. Unless the policeman's there, and then he has immunity because he's a witness. But there might be a case where that policeman outside of court said to the prosecutor, This is what happened. I gave him 92 Miranda warnings, and he is deliberately lying, that policeman. In which case, maybe, maybe you can bring a case against him. Now, suppose I start from that and say, what did you say here to say this falls into the latter category in the lower court? Well, in the lower court, what are – and let me back up. Or here. I mean, I haven't seen anything even here that says that. Well, our argument is in response to the petitioner's argument that there can never be proximate cause, which is a completely different argument. No, no, no. They say never. Okay. Suppose I said, hypothetically, hardly ever. But there could be a situation where the policeman is lying through his teeth to the prosecutor, dot, dot, dot, fill in the blanks. But there's no indication that that is what happened in this case. Now, that last part is what you think is wrong. So I'm asking you what to look at to show that you are right and that last part's wrong.  Well, the testimony at trial was Mr. – Deputy Vega said this was a casual – this was a statement that was utterly voluntary that he – Mr. Teko came in and said, I made a mistake. I wrote down the confession. Mr. Teko's – At trial, you have the witness immunity problem. So was there anything other than that outside of trial? Well, the – Nothing to lose on the witness immunity thing. I'm just boxing it in my mind. Well, right. The question about the steps at – the first thing, you asked me where this was in the trial. In the trial, there has always been this complete dispute between what happened in that room. Mr. Teko says he's put in a closed room for an hour. He has berated and basically threatened with deportation, with an officer with his hand on a gun. Didn't you lose that claim? No. Wasn't that part of – because you lost – didn't you bring a claim, another Fifth Amendment claim for coercion that you lost and another fabrication of evidence claim that you lost? Well, we lost the fabrication of evidence claim, but that's a claim that the evidence was deliberately falsified by the officer, meaning the report – the argument that the officer actually did the report or falsified it, which is different from this claim. And on the coercion claim, it is true that the second jury found no coercion, and we had an argument that the expert was wrongfully excluded but the Ninth Circuit didn't deal with. But the Ninth Circuit also vacated that judgment. And so it's not clear what that status is. And our argument is that if the district judge had instructed the jury on the Miranda theory, we wouldn't have to have gone through any of these – we'd be done by now. Either it's a custodial interrogation or not, and either Deputy Vega lied or he didn't. Counsel, I guess my problem has been your brief says if the police officer told the truth and the government and the prosecutor admitted the statement based on truthful information, there's no liability under 1983. Correct? Yes, we agree. If the police officer, however, was the inducing cause by lying for an admission of the evidence that should otherwise not have been admitted, then I win. I don't see anywhere in the record below before either judge in the two trials you've had where you made that statement in that way. We didn't make that statement in that way because both sides were operating under Ninth Circuit precedent, which didn't require you to make that statement. We didn't elevate the standard for proximate cause on our own. What we've responded to in this court is their argument that it should be a categorical exclusion. And what we're saying is when there's officer misconduct, as we claim happened here, that that should be the basis for proximate cause. In the court below, both sides argued on that causation instruction, which doesn't include that. We didn't ask to have an elevated causation instruction that would make it harder for us to prove our case. We accepted the defendant's instruction. I'm sure what's confusing about all this is that the procedural history with respect to proximate causation is that no one really thought this was a serious issue in the district court. I don't think the defense even made a serious contention. Well, what about now? Can you say to us right now that you have some evidence you would like to introduce that the policeman did mislead the prosecutor about what happened other than the policeman speaking as a witness? Well, the evidence that I would submit to the court would be, first of all, the reports. The reports omit the true circumstances of the interrogation, make it seem like a completely voluntary statement and that he confessed willingly and don't say anything about the fact that there's an hour-long interrogation in a closed room with threats and all the rest that would make it clearly a custodial interrogation. There's some evidence, and the record is spotty on this because none of the parties focused on it, that the prosecutor got the information about the statements from Deputy Vega, and Deputy Vega then testified about this other story throughout the proceedings. Whether or not that's covered by witness immunity, that's never been argued before. At no point did the defense ever say, well, it can't be proximate cause because your evidence is barred by witness immunity, and that issue never got litigated as to whether each of the steps in which Deputy Vega gave the same false account throughout the proceedings. And so what would happen, I mean, under the question, I guess, is if the court is inclined to believe that the Ninth Circuit's view of proximate cause, which seems to be based on Monroe natural and foreseeable consequences and common law principles of proximate cause, if that sweeps too broadly, what we're saying is that, in this case at least, it's really a binary choice. If Deputy Vega is believed, there's no violation, so we don't even get to proximate cause. If our clients believe, then we believe that should be the basis for proximate cause, because you can't allow officer misconduct that deceives the circuit breakers in the system. The prosecutor and the judge are the circuit breakers, right? They're the ones supposed to exercise independent judgment to make sure that constitutionally impermissible evidence is not introduced in violation of the Fifth Amendment. If the officer actually causes the person to be subjected to the violation, which is the language of Section 1983, by deceiving the prosecutor, then that should be at least one of the circumstances in which this could happen. Now, what would happen, I think, if the court agrees with our first position, that a Miranda violation is a violation of a right secured by the Constitution for 1983 purposes, the case would go back for further proceedings with respect to proximate cause, and I assume that the defense would raise a lot of the issues that they're now raising here that they've never raised before. So, this was a huge issue in the late 70s, early 80s. This was a staple of panel discussions in criminal law, partly because Miranda was a little more controversial back then than it may be now. And Assistant Attorney General Rehnquist, Justice Rehnquist, he would have been very aware of the debate we're having today. And when it came to Dickerson, he was also somebody careful with his words. He didn't say Miranda is in the Constitution. He talked about constitutional underpinnings, constitutional basis. And I don't know, of course, but it would surprise me if those particular formulations were just happenstance. And I doubt that he'd be surprised that we were having this debate now, 20 years later, after Dickerson. Don't you think that if, in fact, Dickerson said what you say it said, you could point to something in that opinion that said expressly that and did not have a particular nuance, like basis, underpinning, all that? Well, I am not sure why Chief Justice Rehnquist wrote in the nuanced way that he did. Our position is that the consequence of his analysis is that Miranda is a constitutional decision and that Miranda defines the circumstances in which custodial statements can be introduced in a criminal trial. And that if Miranda is violated, the violation has to be of the Fifth Amendment. And I think this goes to Justice Barrett's question, which is what is the power that the court has, right? Is this a power that the court has that even goes beyond specific constitutional rights, that there's an ability that the court has to create any rules that it wants independent of a violation? I think the narrower and I think better constitutionally based argument would be that that's what Dickerson has to mean, that the violation of the Miranda, core Miranda rule, which is what we're talking about here, we're not talking about any of the periphery, we're talking about the core Miranda rule, that what Miranda meant was that they're defining the circumstances where there's a Fifth Amendment violation. If you violate these Miranda and you introduce that statement of the case in chief, a Fifth Amendment violation has occurred. In thinking about the status of Miranda and Dickerson, it seems that the other side's position is accept it, but don't extend it. If I could boil it down, accept it, but don't extend it. And we've done that with other precedents of that era, even like Bivens. We accept that we haven't declined to extend it. We've declined to extend it. And then they argue, I think, that this seems like an extension of Miranda and Dickerson to a new context, 1983 suits that it is not previously extended to. So why isn't that the right way to think about that case? Where would you get off on that analysis? Well, what we would say is that, to be sure, the court has considered the circumstances in which the Miranda rule applies in a variety of ways. And I think Chief Justice Rehnquist dealt with that issue and Dickerson said, yeah, I mean, the fact that there are exceptions and changes to the Miranda rule is just the natural evolution of a constitutional rule. We're not talking about an extension of the Miranda rule. We're talking about the core principle of the Miranda rule, the introduction of a custodial statement in the prosecution's case in chief. Now, with respect to Section 1983, our position is that 1983 provides the authority for a cause of action for the violation of that right. In other words, once the core Miranda right is violated and the Fifth Amendment right is violated, Section 1983 applies to give someone a remedy for the deprivation of a right secured by the Constitution, which is that violation. And so Congress has done that. Congress could decide not to do that. Congress could decide to limit it. And to be sure, I know my colleague talked about the Thompson case, for example. Well, the Thompson case was about the elements of that cause of action, right? I mean, it was about whether you had to prove innocence or not for that. And the court has always gone back to common law principles and, if necessary, adjusted them and dealt with them. But it hasn't excluded an entire right. I mean, the Fifth Amendment right is one of the fundamental rights in the Constitution and Bill of Rights. Why would you exclude this if a police officer causes someone to be subjected to it? But I think their response in the Solicitor General's office said this as well, which is that the right is fully remedied. A violation of the right is fully remedied by the exclusion of the evidence at trial. And this would be some extension of that, something new that would go beyond the way the right has ordinarily been characterized. But clearly that isn't a complete remedy. I'm standing here on behalf of Mr. Teka, who was acquitted and has absolutely no other remedy than a Section 1983 violation. His life was destroyed by these actions. He gets acquitted when the full story comes out. He is contending that the officer set him up for this and basically set up the prosecutor and the court, too. What remedy does he have? That's what Section 1983 is for. There may not be a lot of these cases. There haven't been a lot of these cases. Since Sornberger, which is one of the first cases in the Seventh Circuit to agree to this proposition, there are a handful of cases. So the other side's contention that all of a sudden there's going to be a groundswell of people filing these cases, that's not going to happen. But in the cases where there is officer misconduct, claims of officer misconduct, it doesn't make any sense to withdraw that Section 1983 remedy because policing that kind of conduct guarantees the integrity of the entire system that Miranda is based on. I mean, officers are always going to be involved in the interrogation process. They're the ones that get the statements. Nobody else gets them. And so if they're not completely honest, then the system breaks down. But when they are completely honest, I mean, you can look at the Fifth Circuit's decision in Murray v. Earle, where the court in Murray v. Earle says, when an officer gives a completely honest account to an independent, neutral intermediary, like a judge, then proximate clause is cut off. They could have asked for a superseding clause instruction. They could have made arguments about proximate causation. They never did. So that's why we're making it here, which doesn't make any sense. But the court granted cert, so we're here. We tried to say that you shouldn't do it, but what can we say? I don't know if there are other questions. I think that the Solicitor General's position is important in the sense that I think although the Solicitor General tries to limit Section 1983 liability to trial rights, I think the Solicitor General of the United States understands what Dickerson means and that it is a constitutional rule. If there's a constitutional violation, Section 1983 provides remedies in that situation. And I think as Justice Scalia said in Hudson v. Michigan, Section 1983 plays a very important remedial role and a deterrent role, and that we think that for the violation of fundamental rights like this, if our client is believed, there should be a remedy. And I'm sorry for the confusion about the fabrication and the way that the procedure happened, but the procedural history is obviously very complex in this. But it would have been a lot simpler if Judge Wu had just agreed that Dickerson gave us the right to make this claim, which is what the Ninth Circuit said that we had. Does your argument that the officer can be liable for the decision of the prosecutor or involved in that present difficult, factual questions about who's going to examine the people involved? I don't think it presents any more difficult factual or discovery issues than many other cases. Well, I mean, you say that, okay, you're the officer, you're subject to liability because you prevailed upon the prosecutor to put the evidence in, to put the statement in. You misrepresented the circumstances of the statement. The prosecutor, you're going to ask him, well, why did you put this evidence in? You're going to ask the officer, what did you tell the prosecutor? I mean, in fact, there was evidence from the prosecutor in the case, in the trial. The prosecutor testified. I guess I'm asking whether that's a good thing, to be able to go back and examine the prosecutor about his conduct of the litigation. Yeah, I think that when you have a claim like this of misconduct that leads to this kind of fundamental violation, that it is a good thing to give someone in Mr. Teko's position a chance to vindicate his rights. I think that's what Congress meant in Section 1983. There are a lot of cases where there are difficulties of discovery or immunity or those issues, and we understand that. I mean, it could be that we can't prove our case because of those issues, and that's possible. We think we can, but it's possible that we can't. And we accept the fact that there are constitutional rules or rules of immunity in Section 1983 that could create difficulties. But those are the kinds of difficulties that civil rights lawyers deal with every day and defense lawyers deal with every day. And I don't think they were any more unusual in this case than many cases. Well, if you can ask the prosecutor, do you get discovery into his notes? Because they might say, you know, this is what Joe says we ought to use this. Or Joe says, look, I beat the confession out of the guy, but I'm not going to testify to that effect. Well, I don't know whether you could get the prosecutor's notes. I mean, whether there would be a – there obviously would be a discovery dispute about that, I assume, since that happens in most of these cases. I think that – it seems to me that there are tools in the discovery process that are handled every day across the country in district courts dealing with civil rights cases that are adequate to handle any of those issues. I think there's also issues relating to – I mean, Heck v. Humphrey will make these kind of cases, you know, less numerous. Because if you are convicted, then you have to go through the whole appellate process. Qualified immunity may apply in some circumstances to limit the circumstances in which officers can be found liable. If officers come forward, as they should do, to give an honest and complete account of their – the circumstances of an interrogation and the prosecutor decides to go forward and the error is in the court accepting something that it shouldn't have accepted, I don't think the officer is responsible there. So we're not saying that. You know, our position is that at least in the context of this case, there's a stark choice between a deputy who, from our standpoint, told a completely false story to get this statement in versus our client who tells a completely different story supported by coworkers, you know, to also contradict the officer. And in that kind of situation, what we're suggesting is that the rules of proximate cause should at least allow for that. And we think that if the court remands the case, accepts our first principle so that we can actually go forward with that claim, the Ninth Circuit could obviously consider whatever rules this court deems necessary for proximate cause or ask the Ninth Circuit to start all over and do another analysis. But we think we can meet any principle of proximate cause other than the categorical you can't show proximate cause principle. Thank you, Counsel. Thank you, Counsel. Thank you. Rebuttal, Mr. Martinez. My friend on the other side is trying to preserve Dickerson by interpreting it in a way that was rejected by Dickerson's case. And it's inconsistent with decisions of this court both predating Dickerson and postdating Dickerson. Dickerson gives Miranda constitutional status, but it doesn't say that Miranda creates a Fifth Amendment right. Our reading of Dickerson and the case law as a whole harmonizes the doctrine, and it's consistent with the language of Dickerson itself, the prior cases, Harris, Quarles, Tucker, Elstad, Payne, the Chavez plurality, and five justices and their votes in the Patain case, where five justices agreed that Dickerson did not undermine the pre-Dickerson, post-Miranda cases. We think you should adopt Chief Justice Rehnquist's consistent, common-sense, middle-ground approach to Miranda. You should preserve Dickerson, but you should hold there's no Fifth Amendment right here giving rise to 1983. As to causation, they've raised a totally new theory here. It wasn't raised below. They described their own jury instruction, the one at issue here at the charge conference, as in causation terms. That's at JA 296. Everyone has always understood their causation theory not to require a lie. That's how the Ninth Circuit understood it. That's why the Ninth Circuit addressed this issue this way. Their new theory, even if it weren't forfeited, it would be factually untenable because there's no evidence of any lies that is actionable here. Their brief points repeatedly the lies that were allegedly told at the suppression hearing, but the testimony at the suppression hearing is immunized. They also point to the statement of approximate cause and to the incident report, but the alleged lies there don't bear on the custody issue that's at the core of this Miranda case. And in any event, you have a jury that said that there weren't lies there. The jury rejected the fabrication of evidence claim based on those exact same reports. Ultimately, Your Honors, their claim here is that they need a remedy. They need a chance to get relief for this alleged misconduct. They had two chances to do that. They brought a 14th Amendment due process theory. They brought a coercion theory. The jury agreed with us on both theories. This case should end. We respectfully ask you to reverse. Thank you, Counsel. The case is submitted.